

JUDGE BATTS          TO CIV 3865

Ellenoff Grossman & Schole LLP
150 East 42nd Street, 11th Floor
New York, New York 10017
(212) 370-1300 (telephone)
(212) 370-7889 (facsimile)
Ted Poretz (TP-5387)
Adrienne Ward (AW-4126)
*Attorneys for Plaintiffs WES&A Holdings, LLC,*
*and Waste Express, Inc.*

RECEIVED
MAY 11 2010
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WES&A HOLDINGS, LLC, and
WASTE EXPRESS, INC.,

                                        *Plaintiffs,*          Index No. 10 Civ 3865

-against-                                                      **COMPLAINT**

NICHOLAS J. MALINO,
ROBERT T. ROEVER, and
CAPITOLINE ADVISORY GROUP INC.,

                                        *Defendants.*

Plaintiffs WES&A Holdings, LLC ("WES&A") and Waste Express, Inc. ("Waste Express"), for their complaint in the above-titled action, hereby allege and state as follows:

1.      This is an action to recover damages incurred as a result of breaches of fiduciary duty by Defendants Nicholas J. Malino ("Malino") and Robert T. Roever ("Roever") in connection with their responsibilities as directors and officers of the Amerex Group, Inc. ("Amerex Group") and its wholly-owned subsidiary, Amerex Companies, Inc. ("Amerex, Inc."; collectively, the companies are referred to as

"Amerex") in 2007 and 2008.  This action also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that Malino and Roever are liable as responsible persons for Amerex's outstanding tax liabilities, which include penalties and interest, stemming from their repeated and continued failure to cause Amerex to timely pay payroll taxes.

2.     Malino was Chief Executive Officer and Director of Amerex from September 2005 through July 10, 2008.  Roever was Director of Amerex from July 2006 through July 28, 2009.  On information and belief, Malino and Roever, whose close working relationship predated their affiliation with Amerex, placed their loyalty to each other ahead of their obligations to Amerex and its shareholders.

3.     In 2007, in breach of their duty of loyalty to Amerex, Roever and Malino caused Amerex to enter into one or more transactions that earned them and or Defendant Capitoline Advisory Group, Inc. ("Capitoline") $150,000 in fees from Amerex at a time when Amerex could not afford it.

4.     In further breach of their obligations to Amerex, Roever and Malino failed to take corrective measures when they learned that Amerex, Inc. and its wholly-owned subsidiary Waste Express had (a) failed to pay hundreds of thousands of dollars in federal payroll taxes and (b) incurred thousands of additional dollars in interest and penalties.  In total, the liabilities for delinquent taxes, penalties and interest grew to exceed $950,000.

5.     WES&A has funded, including penalties and interest, $527,000 in past due federal payroll taxes, $185,000 in past due state and local payroll taxes and $60,000 in past due real property taxes; the total amount exceeds $772,000.  As of the filing of

this complaint, the amount still claimed in taxes, penalties and interest by the Internal Revenue Service ("IRS") and state tax authorities exceeds $200,000.

<b>The Parties</b>

6.      WES&A is a Missouri limited liability company with its principal place of business in Kansas City, Missouri.  On or about August 24, 2009, pursuant to a Bill of Sale, Blanket Transfer and Assignment Agreement, Amerex, Inc. and Waste Express agreed to assign to WES&A all of their rights, title and interest in any causes of action and litigation claims.

7.      Waste Express was a wholly-owned subsidiary of Amerex, Inc.  On or about August 24, 2009, WES&A foreclosed on Waste Express, and as a result Waste Express became a wholly-owned subsidiary of WES&A.  Waste Express is a Missouri corporation whose principal place of business is Kansas City, Missouri.

8.      On information and belief, Roever is an individual residing in Port Washington, New York.  Roever was Director of Amerex from in and around July 2006 through on or about July 28, 2009.  On information and belief, throughout that time and continuing to the present, Roever has been the sole owner of Capitoline Advisory Group Inc. ("Capitoline"), a New York- based investment advisory firm specializing in financing for small and mid cap public companies.

9.      On information and belief, Malino is an individual residing in Westport, Connecticut.  Malino was Chief Executive Officer and Director of Amerex from in and around September 2005 through on or about July 10, 2008.  On information and belief, Malino was President and Secretary of Waste Express during some or all of that period,

3

but including the year 2007 through on or about July 28, 2008.  On information and belief, during some or all of that time period, Malino was employed by, a principal of, or an agent of Roever's company Capitoline.

10.     On information or belief, Capitoline is a New York corporation with its principal place of business in New York, New York.  On information and belief, Capitoline conducts business under the name "Capitoline Advisors Inc.," a name that is not registered with the New York Department of State.

11.     Non-party Amerex Group is an Oklahoma corporation whose principal place of business was located in Tulsa, Oklahoma.

12.     Non-party Amerex, Inc. is an Oklahoma corporation whose principal place of business was located in Tulsa, Oklahoma.

### Jurisdiction and Venue

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332 based on the diversity of the parties and on the amount in controversy, which exceeds $75,000 for each defendant.

14.     Venue in this District is proper in accordance with 28 U.S.C.  § 1391(a), because Malino and Roever maintained offices in New York, New York, conducted their activities on behalf of Amerex from those offices, and, on information and belief, reside within 100 miles of New York, New York.

### Facts Common to All Claims

### Malino's and Roever's Obligations to Amerex

15.     In early 2005, Amerex, Inc. and its subsidiaries were privately held

companies in the business of providing services to customers who need to dispose of industrial and household hazardous waste.

16.     On information and belief, Malino and Roever had a business relationship and shared office space before either began to work for or with Amerex.

17.     In and around early 2005, Amerex planned to make a series of acquisitions of corporations and assets in the waste management industry and to become a public company through a reverse merger transaction.

18.     In and around April 26, 2005, Amerex hired Roever's firm, Capitoline, as agent to identify funding sources.  If successful, Capitoline would be paid 10% of any financing and receive warrants to purchase common stock of Amerex, Inc.

19.     On information and belief, Malino worked with Roever to help him position Amerex so that it could obtain funding from institutional investors, and Roever caused Amerex to hire Malino as CEO of Amerex, Inc. and appoint him to its board of directors.

20.     On information and belief, during the entire time he served as CEO and an Amerex director, Malino worked out of Capitoline's offices in New York City, although Amerex was located in Oklahoma and Waste Express was in Missouri.

21.     On or about November 21, 2005, Amerex, Inc., entered into a financing arrangement with an institutional investor, CAMOFI Master LDC ("CAMOFI"), under which CAMOFI loaned funds to Amerex, Inc. pursuant to the terms of a Securities Purchase Agreement (the "Agreement").  Under the Agreement, Amerex, Inc. executed a two-year convertible note in favor of CAMOFI in the aggregate original principal amount

of $6,800,000 (the "Note"). Amerex, Inc. also executed a Security Agreement and certain deeds to secure repayment of its indebtedness, and Waste Express executed a Subsidiary Guarantee in favor of CAMOFI.

22.      Amerex Inc.'s obligations under the Agreement included the provision of periodic financial reports, the timely filing of a registration statement with the Securities and Exchange Commission (the "SEC") and repayment of the Note on or before its November 21, 2007 maturity date. Amerex was also prohibited from entering into subsequent financing agreements involving a "Variable Rate Transaction" as defined under the Agreement. The Note further prohibited Amerex, without CAMOFI's prior consent, from entering into any indebtedness or incurring any liens senior to, on par with or subordinated to its obligations under the Note.

23.      For his role as placement agent, Roever, through Capitoline, received substantial compensation from Amerex:  $250,000 cash and five-year warrants to purchase 3,959,400 shares of common stock. On information and belief, Roever caused Capitoline to transfer half of the shares underlying the warrant (1,979,700 shares) to Malino.

24.      On or about July 5, 2006, Amerex Group became a publicly traded company through a reverse merger transaction. On or about that date, Roever and Malino became directors of the public company, and Malino became CEO of the public company. For his service as CEO, Malino received a $180,000 annual salary, and Amerex agreed to pay $1,500 a month to Capitoline for office space.

25.     On information and belief, during some or all of the time Malino was CEO of Amerex, he was also employed by or an agent of Capitoline.  For certain correspondence he used an email address, nmalino@capitolineadvisors.com, rather than an Amerex email address.

26.     Under Oklahoma law, Amerex's state of incorporation, the directors and officers of an Oklahoma corporation are charged with two primary duties to the corporation and its shareholders:  the duty of care and the duty of loyalty.

27.     The duty of care requires directors and officers to inform themselves of all material information reasonably available to them before making a business decision, and to act with the requisite degree of care in making the decision.

28.     The duty of loyalty demands that the best interests of the corporation and its shareholders take precedence over any personal interest or bias of a director that is not generally shared by the shareholders.  Under the duty of loyalty, directors also must act in good faith in carrying out their obligations to the corporation and implement an adequate system of oversight and controls to assure themselves that they are informed of risks or problems requiring their attention.

29.     Under Oklahoma law, a conflict of interest will not result in a breach of the duty of loyalty by officer or director provided that the contract or transaction in which the director has an interest has been fully disclosed and approved by a majority vote of disinterested directors. 18 Okla. Stat. § 1030.A.1.

30.     An officer or director with financial control over a corporation also has an obligation to cause the corporation to pay its employees' federal and state payroll taxes.

If he or she consciously or intentionally causes the corporation to pay other creditors instead of its tax liabilities, he or she will breach the duty of care and loyalty owed to the corporation and its shareholders.

### Malino's and Roever's Breach of their Obligations to Amerex

31.     In 2005 and 2006, subsequent to the CAMOFI financing, under Malino's oversight as CEO, Amerex made a series of acquisitions of companies and assets. On information and belief, these transactions were financed in large part by the CAMOFI funding.

32.     By year end 2006, the acquisitions had failed to generate the anticipated revenues. According to the Form 10-KSB filed by the Amerex Group with the SEC on May 18, 2007, for the fiscal year ended December 31, 2006 (the "2006 annual report"), Amerex had determined it could not develop waste treatment facilities at two of the acquired properties, which were located in Pryor, Oklahoma, and Leigh, Texas, and that these assets were essentially worthless. Other operations of the company did not produce sufficient revenues to cover Amerex's expenses and debts.

33.     On information and belief, shortly after the reverse merger transaction by which Amerex became a public company, Amerex, Inc. and Waste Express began to fail to pay over the withheld portion of income tax and FICA (social security and Medicare) to the IRS. In addition, the companies failed to file the related payroll tax returns.

34.     According to the 2006 annual report, "[t]he payroll taxes due at December 31, 2006 amounted to approximately $455,000 and estimated penalties and interest

amounted to approximately $130,000. As a result of the failure to pay these taxes, the Internal Revenue Service placed a lien on the Company's assets."

35.     On or about May 17, 2007, Malino signed the 2006 annual report as Amerex Group's CEO, President and director.

36.     On information and belief, in 2006 and at all other times relevant to this complaint, Amerex and Waste Express shared a single accounting department. The filing of tax returns and payment of payroll taxes for both Amerex and Waste Express were the primary responsibility of Amerex's controller. Amerex did not have a Chief Financial Officer, and, on information and belief, the controller reported to Malino. Therefore, upon the filing of the annual report for the fiscal year ended 2006, if not before, Roever and Malino knew or should have known that Amerex was consistently not meeting its tax obligations and that the controller was not carrying out his duties and responsibilities.

37.     On information and belief, in the first half of 2007, Malino's and Roever's control over Amerex grew. By August 2007, Amerex's two founders had ended their relationship with the company, leaving Malino and Roever as Amerex's senior-most directors.

38.     On information and belief, in this time period, the payroll tax arrears continued to grow.

39.     On or about August 14, 2007, Roever and Malino sought and obtained $750,000 in financing from Professional Offshore Opportunity Fund, Ltd. ("PROOF").

40.     Under the terms of the agreement with PROOF, the financing was in the form of a Secured Promissory Note payable in monthly installments commencing on

September 14, 2007, plus interest and a "utilization fee," with payments to be completed by February 10, 2008. In addition, Amerex also issued 500,000 shares of its common stock to PROOF. If Amerex was unable to deliver PROOF registered – that is, freely tradable – shares by January 15, 2008, it would have to repurchase them for $700,000.

41.     On information and belief, there was no sound business reason for obtaining financing under such onerous terms from PROOF. Not only did the financing violate Amerex's agreement with CAMOFI that it would not enter into indebtedness without CAMOFI's consent, but Roever and Malino knew or should have known that Amerex had no financial ability to repay the debt.

42.     On or about August 17, 2007, and on or about September 19, 2007, Amerex paid Rover's company, Capitoline, a total of $100,000. On or about September 19, 2007, Amerex paid Malino $50,000. This was in addition to the salary Malino received as CEO.

43.     On information and belief, the total of $150,000 was paid to Roever and Malino as a commission for arranging the PROOF transaction. This meant that the PROOF transaction resulted in Amerex receiving just $600,000 to apply to its obligations.

44.     The Form 8-K filed with the SEC on August 16, 2007, by which Amerex disclosed the PROOF transaction, did not disclose that Capitoline or Malino would receive any compensation for arranging the transaction.

45.     A search of Amerex company records has not located any board minutes or consents by the Amerex Board of Directors to the PROOF transaction or to payment of

a commission to Roever or Malino.

46.    Amerex almost immediately defaulted on its obligations to PROOF. PROOF sued Amerex and, on August 26, 2008, PROOF was granted a judgment of $1,577,231.51, with interest.

47.    On information and belief, $253,000 of the funds received from PROOF were used to pay part of the federal payroll tax arrears.  This left approximately $188,000 in arrears, and Amerex immediately began to accrue new arrears, interest and penalties.

48.    On information and belief, Roever and Malino knew or should have known that the company's controller was continuing to fail to carry out his responsibilities to oversee the filing of payroll tax returns and payment of payroll taxes.

49.    On information and belief, by the date of the PROOF loan, Amerex was insolvent.

50.    On information and belief, Roever and Malino did not act to protect Amerex or its shareholders.  Instead, in and around August 2007, they recklessly began to devote significant corporate resources to pursuing a proposed $2.2 million acquisition of a waste management company, Perma-Fix Treatment Solutions ("Perma-Fix"), although they had no reasonable possibility of obtaining financing.

51.    On information and belief, Malino and Roever were not motivated by the best interests of Amerex in considering the transaction, but by the prospect of generating consulting fees or commissions for Capitoline on the transaction.

52.    On information and belief, Malino and Roever wasted Amerex's limited resources on conducting due diligence on the Perma-Fix deal, instead of addressing

ongoing and remaining issues facing Amerex, including the tax arrears.

### Discovery of Roever's and Malino's Breach of Duty

53.     During the years 2006 and 2007, Amerex defaulted on a number of its obligations to CAMOFI under the terms of the Agreement and Note.

54.     By a series of letter agreements between December 19, 2007, and September 9, 2008, CAMOFI agreed to extend the due date of the Note to November 21, 2010, and to permit Amerex, Inc. to defer certain principal and interest payments. Amerex, on its part, agreed to provide CAMOFI with access to its books and records.

55.     In and around of June 9, 2008, at CAMOFI's request, Amerex engaged an outside restructuring advisor, Glenwood Capital, LLC ("Glenwood").  Glenwood gained access to the books and records of Amerex and began to conduct an investigation. Through this investigation, Glenwood began to discover the breaches by Roever and Malino alleged herein.

56.     Glenwood sought to obtain minutes of meetings of Amerex's and Waste Express's boards of directors, but these were never provided or located.  Malino was also asked if the minutes were stored in his New York office, but he did not provide copies.

57.     In late May, 2008, Glenwood began a preliminary review of payroll taxes and reported to Amerex's officers and directors, including Roever and Malino, the initial results of the review, including that:

      a.   On or about August 14, 2007, Amerex's balance on payroll tax arrears was approximately $188,000;

      b.   By December 31, 2007, the balance had grown to approximately

$369,000;

c.  No payroll taxes were paid for the first payroll in January or for March or April 2008;

d.  Amerex appeared to have accrued $159,000 in penalties and interest; and

e.  Waste Express might have accrued $151,000 in payroll tax liabilities, including penalties and interest.

58.  In and around June 2008 and thereafter, oversight of payment of payroll taxes was removed from Malino, and Amerex began to pay its current payroll tax obligations.

59.  On or about July 10, 2008, Malino resigned as Amerex's CEO and from the Amerex Board.

60.  On or about July 28, 2009, Roever resigned from the Amerex Board.

61.  Over time, it was discovered that Amerex's liabilities in tax arrears incurred between 2005 through the first half of 2008 exceeded $739,000, including penalties and interest, and those of Waste Express exceeded $240,000, including penalties and interest.

62.  On August 24, 2009, after Amerex again defaulted on certain material obligations to CAMOFI, Amerex and Waste Express agreed to convey to CAMOFI or its designee, WES&A, all of its assets.

63.  WES&A subsequently funded $527,000 in past due federal payroll taxes of Amerex, including penalties and interest, through customer payments made directly to the IRS and the resulting additional funding required by the business operations.

64.     Other payments were made to Oklahoma, Oregon, Missouri and Colorado and various localities for unpaid payroll taxes and real estate tax liabilities incurred between 2005 through the first quarter of 2008.  For Amerex, these amounts exceeded $156,000, including penalties and interest, and for Waste Express, $88,000, including penalties and interest.  Whenever possible, WES&A took advantage of tax amnesty programs that reduced the amount of interest and penalties owed.

65.     In and around December 2009, WES&A submitted a request to the IRS seeking an abatement of a claim against Waste Express for assessed taxes and statutory additions for the quarterly periods ending December 31, 2005, September 30, 2007, December 31, 2007, March 31, 2008 and June 2008.  As of December 2009, the amount owed was approximately $154,817, of which $8,397 was penalties and interest.  WES&A has not received a final determination from the IRS on this request.

66.     WES&A has also discovered outstanding claims by Oklahoma ($21,273 in taxes, $9,579 in penalties and interest); Connecticut ($14,836 in taxes, $4,939 in penalties and interest); and Oregon ($1,511 in taxes, $2,832 in penalties and interest) against Amerex, Inc.  The amounts claimed by the states total approximately $54,970, of which $17,349 is penalties and interest.

67.     Glenwood's investigation also revealed the $50,000 paid to Malino and $100,000 paid to Capitoline after the PROOF transaction.

### FIRST CAUSE OF ACTION
**Breach of Fiduciary Duty against Malino**

68.     Plaintiff WES&A repeats and realleges each and every allegation

contained in paragraphs 1 through 67 of this Complaint.

69. As an officer and director of Amerex, Malino owed Amerex and its shareholders a fiduciary duty and was bound at all times to exercise utmost good faith, loyalty and care in the performance of his duties.

70. On information and belief, Malino's breaches of duty included, but were not limited to:

    a. Recklessly causing Amerex to enter into the PROOF transaction, whereby he earned a $50,000 fee; and

    b. Upon learning of Amerex's payroll tax arrears, repeatedly and recklessly failing to address the issue, which caused Amerex to incur over $100,000.00 in penalties and interest.

71. By reason of the foregoing, WES&A, as assignee of Amerex, has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty against Roever

72. Plaintiff WES&A repeats and realleges each and every allegation contained in paragraphs 1 through 71 of this Complaint.

73. As a director of Amerex, Roever owed Amerex and its shareholders a fiduciary duty and was bound at all times to exercise utmost good faith, loyalty and care in the performance of his duties.

74. On information and belief, Roever's breaches of duty included, but were not limited to:

a. Recklessly causing Amerex to enter into the PROOF transaction, whereby the company he controls, Capitoline, earned a $100,000 fee; and

b. Upon learning of Amerex's payroll tax arrears, repeatedly and recklessly failing to address the issue, which caused Amerex to incur over $100,000.00 in penalties and interest.

75.     By reason of the foregoing, WES&A, as assignee of Amerex, has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Voidable Transfer under Uniform Fraudulent Transfer Act against Malino O.S. §§ 24-7-112 et seq.**

76.     Plaintiff WES&A repeats and realleges each and every allegation contained in paragraphs 1 through 75 of this Complaint.

77.     On or about September 19, 2007, Amerex made a $50,000 transfer to Malino, a company insider.

78.     On information and belief, Amerex was insolvent on the date of the transfer.

79.     On information and belief, Amerex did not receive a reasonably equivalent value from Malino in exchange for the transfer, and Amerex's debts were beyond its ability to pay as they became due.

80.     The transfer to Malino should be voided, and the $50,000 returned.

### FOURTH CAUSE OF ACTION
**Voidable Transfer Under Uniform Fraudulent Transfer Act against Capitoline O.S. §§ 24-7-112 et seq.**

81.     Plaintiff WES&A repeats and realleges each and every allegation

contained in paragraphs 1 through 80 of this Complaint.

82.    On or about August 17, 2007, Amerex made a $50,000 transfer to Capitoline, the wholly-owned corporation of Roever, a company insider.  On or about September 19, 2007, Amerex made a second $50,000 transfer to Capitoline.

83.    On information and belief, Amerex was insolvent on the date of both transfers.

84.    On information and belief, Amerex did not receive a reasonably equivalent value from Capitoline in exchange for the transfers, and Amerex's debts were beyond its ability to pay as they became due.

85.    The transfers to Capitoline should be avoided, and the $100,000 returned.

## FIFTH CAUSE OF ACTION
### Contribution against Roever and Malino

86.    Plaintiff WES&A repeats and realleges each and every allegation contained in paragraphs 1 through 85 of this Complaint.

87.    On information and belief, beginning in 2006 and repeatedly thereafter, Defendants Malino and Roever received information that Amerex and Waste Express were not current in their payroll taxes.

88.    Defendants Malino and Roever failed to act on the information, and instead permitted the arrears, penalties and interest to grow.

89.    On information and belief, some funds from the PROOF transaction were used to pay tax arrears.  However, instead of applying the full amount of the loan to the arrears, Malino paid himself $50,000, and Roever had $100,000 paid to his company,

Capitoline.

90.     On information and belief, had the $150,000 not been paid to Malino and Roever, Amerex could have paid most of the $188,000 in unpaid taxes, penalties and interest then due the IRS.

91.     On information and belief, from in and around May 2007, through in and around July 2008, Malino and Roever knowingly or recklessly failed to take measures to ensure that payroll taxes were timely paid.

92.     WES&A, although it was not a responsible person, provided funding of over $527,000 to reduce the federal tax arrears, penalties and interest; $185,000 to reduce the state payroll tax arrears, penalties and interest; and $60,000 to reduce past due real property taxes, penalties and interest.

93.     Defendants Malino and Roever, as responsible persons, were liable for payment of the tax arrears, penalties and interest.

94.     Defendants Malino and Roever are jointly and severally liable for their proportionate share of the tax arrears, penalties and interest, in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### Declaratory Judgment against Roever and Malino
### for Payment of Tax Arrears to the IRS

95.     Plaintiffs WES&A and Waste Express repeat and reallege each and every allegation contained in paragraphs 1 through 94 of this Complaint.

96.     In and around December 2009, WES&A submitted a request to the IRS on behalf of Waste Express seeking an abatement of assessed taxes and statutory additions

18

for the periods December 31, 2005, September 30, 2007, December 31, 2007, March 31, 2008 and June 2008. As of that date, the amount owed was approximately $146,421, plus $8,397 in penalties and fees.

97.     Defendants Malino and Roever, as responsible persons, are liable for payment of the payroll tax arrears, penalties and interest.

98.     WES&A has made efforts to mitigate this liability, and the request for abatement is before the IRS.

99.     There is an actual controversy relating to the respective rights and obligations of the parties regarding the outstanding IRS tax liability.

100.     Without a declaration, there is a real and outstanding possibility that the IRS could take legal action against WES&A and/or Waste Express, which could result in irreparable harm to WES&A and/or Waste Express.

101.     WES&A asks the Court to declare that Defendants Malino and Roever are jointly and severally liable for their proportionate share of the payroll tax arrears, penalties and interest, in an amount to be determined at trial, which will be reduced pro rata based upon any abatement granted by the IRS.

### SEVENTH CAUSE OF ACTION
**Declaratory Judgment against Roever and Malino
for Payment of Tax Arrears to State Tax Authorities**

102.     Plaintiff WES&A repeats and realleges each and every allegation contained in paragraphs 1 through 101 of this Complaint.

103.     In and around November 2009, WES&A learned that Amerex, Inc. had failed to pay payroll taxes to the States of Oklahoma, Connecticut and Oregon incurred in

tax year 2006 and 2007 and the first 6 months of 2008 totaling approximately $37,620, plus $17,349 in penalties and fees.

104.    Defendants Malino and Roever, as responsible persons, are liable for payment of the payroll tax arrears, penalties and interest.

105.    WES&A has made efforts to mitigate this liability.

106.    There is an actual controversy relating to the respective rights and obligations of the parties regarding the outstanding State payroll taxes.

107.    Without a declaration, there is a real and outstanding possibility that the States of Oklahoma, Connecticut and Oregon could take legal action against WES&A, which could result in irreparable harm to WES&A.

108.    WES&A asks the Court to declare that Defendants Malino and Roever are jointly and severally liable for their proportionate share of the tax arrears, penalties and interest, in an amount to be determined at trial, which will be reduced pro rata based upon any abatements granted by the State tax authorities.

**WHEREFORE,** Plaintiffs WES&A and Waste Express demand Judgment against Defendants, as follows:

A.    Awarding judgment in favor of Plaintiff WES&A and against Defendants Malino, Roever and Capitoline in an amount to be determined at trial.

B.    A declaratory judgment that Defendants Roever and Malino are jointly and severally liable to the IRS for the assessed taxes and statutory additions of $154,817.91, stemming from unpaid taxes of Waste Express incurred in tax years 2005 and 2007 and the first 6 months of 2008, less any abatement granted by the IRS;

C.      A declaratory judgment that Defendants Roever and Malino are jointly and severally liable to the States of Oklahoma, Connecticut and Oregon for the assessed taxes and statutory additions of $54,969.88, stemming from unpaid taxes of Amerex, Inc. incurred in tax years 2006 and 2007 and the first 6 months of 2008, less any abatement granted by the States tax authorities;

D.      Awarding the costs and expenses, including attorneys' fees and the costs and disbursements of this action; and any other and further relief which the Court may deem just and proper.

Dated: New York, New York
        May __, 2010

ELLENOFF GROSSMAN & SCHOLE LLP
*Attorneys for Plaintiffs WES & A Holdings, LLC,*
*and Waste Express, Inc.*

By:_____
        Ted Poretz (TP-5387)
        Adrienne M. Ward (AW-4126)
        Holly Froum (HF-4155)
        150 East 42nd Street
        New York, New York 10017
        (212) 370-1300 (telephone)
        (212) 370-7889 (facsimile)

*Index No.*          *Year 20*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WES&A HOLDINGS, LLC, and
WASTE EXPRESS, INC.,

<em>Plaintiffs,</em>

-*against*-

NICHOLAS J. MALINO,
ROBERT T. ROEVER, and
CAPITOLINE ADVISORY GROUP INC.

Defendants.

**Complaint**

ELLENOFF GROSSMAN & SCHOLE LLP

Plaintiffs

150 EAST 42ND STREET

NEW YORK, NEW YORK 10017

(212) 370-1300

*Attorneys for*

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.

Dated:...........................     Signature ...................................

Print Signer's Name..........................

Service of a copy of the within

Dated:            is hereby admitted.

......................................
Attorney(s) for

**PLEASE TAKE NOTICE**

☐ NOTICE OF ENTRY   that the within is a (certified) true copy of a entered in the office of the clerk of the within-named Court on   20

☐ NOTICE OF SETTLEMENT   that an Order of which the within is a true copy will be presented for settlement to the Hon. at   , one of the judges of the within-named Court, on   20 , at   M.

Dated:

ELLENOFF GROSSMAN & SCHOLE LLP

*Attorneys for*

150 EAST 42ND STREET

NEW YORK, NEW YORK 10017

To: